STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 31-4-15 Vtec |

| | |
|---|---|
| BlackRock Construction LLC Subdivision | DECISION ON MOTION |

Applicant BlackRock Construction, LLC (BlackRock) appeals a decision by the Town of Hinesburg Development Review Board (DRB) denying its sketch plan for a mixed-use development known as "Haystack Crossing" (the Project) located in the Town of Hinesburg, Vermont (Town).  The DRB denied the sketch plan based on its conclusion that the Town does not currently have adequate wastewater capacity to meet the full needs of the proposed 216-unit subdivision.  BlackRock challenges the authority of the DRB to deny its sketch plan on this basis.

The parties agree that the sole issue for this Court to decide is whether the DRB has the authority to deny sketch plan approval on the basis of inadequate wastewater capacity. BlackRock and the Town have each submitted a memorandum of law in support of their positions.  Because this appeal presents a pure legal issue and the facts are not in dispute, we treat the filings as cross-motions for summary judgment.

**Factual Background**

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.      On December 12, 2013, BlackRock applied for sketch plan approval of a mixed-use development known as "Haystack Crossing" in the Town of Hinesburg.

2.      The December 12, 2013 sketch plan is subject to the Town of Hinesburg Subdivision Regulations adopted on November 5, 2013 (the Regulations).

3.      On August 27, 2014, the DRB issued its findings of fact, conclusions and order denying sketch plan approval for the Project (August 27, 2014 Decision).  A copy of the August 27, 2014 Decision was submitted as BlackRock Ex. A.

1

4. In its August 27, 2014 Decision, the DRB denied sketch plan approval largely due to concerns that the proposed Project failed to provide an adequate mix of uses.

5. In its August 27, 2014 Decision, the DRB addressed the issue of wastewater capacity in Conclusion 12, providing:

> Subdivision planning standard 5.1.8 & 5.1.9 & 5.1.11 (water supply, wastewater disposal, municipal services). As noted in the Applicant's May 9 narrative, the project will have substantial impacts on the Town's water supply and wastewater treatment capacities. These are not grounds to deny the proposed sketch plan, but do warrant further review at later stages of any subdivision review (e.g., preliminary and final plat review) before compliance with these planning standards can be determined.

6. On February 12, 2015, BlackRock submitted a second sketch plan to the DRB.

7. The February 12, 2015 sketch plan is also subject to the Hinesburg Subdivision Regulations adopted on November 5, 2013.

8. On March 13, 2015, the DRB issued its findings of fact, conclusions and order (March 13, 2015 Decision), submitted as BlackRock Ex. B, again denying sketch plan approval.

9. In its March 13, 2015 Decision, the DRB found that the Project's proposed 219 residential units would require 45,990 gallons of wastewater capacity per day, while the Town had only 40,908 gallons/day in available reserve capacity.

10. The DRB concluded that the sketch plan should be denied because the Town had inadequate wastewater treatment capacity to meet the full subdivision's needs.

## Discussion

In this appeal, the parties stipulate that the sole issue for our consideration is whether it was proper for the DRB to deny BlackRock's sketch plan due to wastewater capacity concerns. In its memorandum of law, BlackRock contends that the DRB does not have authority to deny a sketch plan on the basis of inadequate wastewater capacity, and therefore, its sketch plan must be approved. In its responsive memorandum, the Town contends that the DRB's denial was proper because the Regulations direct the DRB to review a sketch plan to determine whether it complies with substantive provisions of the Regulations and to approve, approve and modify, or deny the sketch plan based on its compliance. Therefore, the Town argues, the inadequate wastewater capacity issue is a proper basis to deny BlackRock's sketch plan. Although the

2

parties label their filings as memoranda of law, because the facts are undisputed and the parties present a pure legal issue for our consideration, we treat the filings as cross-motions for summary judgment. See In re Shenandoah, LLC, Docket No. 245-10-08 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 11, 2009).

We will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. V.R.C.P. 56(c)(1)(A). We also accept as true all factual allegations made in opposition to a motion for summary judgment, so long as they are supported by "specific citations to particular parts of materials in the record." V.R.C.P. 56(c)(1)(A).

In many municipalities, review at the preliminary sketch plan stage is often relatively cursory, largely focusing on whether the proposal should be classified as a major or minor subdivision, and highlighting issues for further discussion that will need to be addressed at a later stage in the permitting process. See Perras & Sons, Inc., No. 29-2-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. Oct. 18, 2006) (Durkin, J.). The stated purpose of sketch plan review in Section 3.1 of the Regulations adopts this conceptual approach, providing:

> The purpose of sketch plan review is to allow the subdivider to meet with the [DRB] to discuss the proposed subdivision conceptually, before the subdivider invests substantial effort and resources in design and planning for the project. Sketch plan review also gives the [DRB] an opportunity to classify the project and define the issues to be addressed by the subdivider for subsequent meetings.

Section 3.1.6—Action on the Sketch Plan—however, directs the Hinesburg DRB to "study each sketch plan to determine whether or not it conforms to, or would be in conflict with the Town Plan, the Zoning Bylaws and any other By-Laws then in effect," and to "approve, modify and approve, or disapprove the sketch plan" within 45 days after the sketch plan review.

The bylaws relied on by the DRB in its March 13, 2015 Decision are found in Section 5.1 of the Regulations, which lists applicable subdivision planning standards. Specifically, Section 5.1.9 provides the wastewater disposal standard, requiring the DRB to determine "[w]hether the project has access to municipal wastewater disposal facilities, in conformance with any

3

sewage disposal policies or regulations in effect . . . ." In its March 13, 2015 Decision, the DRB concluded that the sketch plan did not comply with Section 5.1.9 because the Town had inadequate wastewater capacity to meet the full needs of the Project.

Sketch plan review in a specific town is governed by the town's regulations. We need not decide whether the Hinesburg DRB has the authority, under the particular Regulations at issue here, to deny sketch plan approval on the basis of wastewater capacity. Accepting that the DRB has such authority, we find that the DRB's August 27, 2014 Decision denying BlackRock's initial sketch plan, precludes the DRB from denying sketch plan approval on the basis of inadequate wastewater treatment capacity in its March 13, 2015 Decision.

In its August 27, 2014 findings of fact, conclusion and order, the DRB concluded that inadequate wastewater treatment capacities "are not grounds to deny the proposed sketch plan," but rather are issues for review at later stages. BlackRock's Ex. A, at 6. As this Court has held, a preliminary determination that goes unappealed, provides finality for certain legal determinations properly made at that stage of the subdivision review proceeding. In re Simpson Dev. Corp., No. 54-3-05 Vtec, slip op. at 13 (Vt. Envtl. Ct. June 27, 2006). If, as the Town argues, it was proper for the DRB to make certain legal determinations about the Project's compliance with applicable subdivision regulations in its sketch plan review, then those determinations are entitled to finality if they are not appealed. Accordingly, because the DRB's conclusions in its August 27, 2014 Decision were not appealed, they are final and binding even if they are in error. See 24 V.S.A. § 4472(d). As a result, BlackRock and the Town are "bound by that decision." Id.

To hold otherwise would defeat the predictability and fairness that local land use regulations should achieve. As Section 3.1 of the Regulations makes clear, sketch plan review is meant to identify issues and begin a dialogue between the applicant and DRB. The applicant can then take the suggestions and issues identified by the DRB and modify the project accordingly. In its August 27, 2014 Decision, the DRB highlighted issues with BlackRock's initial sketch plan concerning the layout and incorporation of mixed use development. Further, the DRB specifically told BlackRock that wastewater capacity was not an issue at the sketch plan stage. BlackRock then submitted a revised sketch plan addressing those issues identified by the

4

DRB. Now, after time, effort, and capital has been expended addressing issues BlackRock was told were relevant, the DRB surprises BlackRock with the conclusion that wastewater capacity is, after all, an issue that must be addressed. It is certainly the case that any wastewater capacity issue will need to be addressed at later stages of the permitting process. Yet the DRB cannot derail the Project at this preliminary stage with an issue BlackRock had no notice of and, what is more, was specifically told need not be addressed at the sketch plan stage.

For the foregoing reasons, we conclude that the DRB is bound by its conclusion that inadequate wastewater capacity is not grounds to deny BlackRock's sketch plan, and therefore, we **GRANT** summary judgment for BlackRock.

A Judgment Order accompanies this Merits Decision. This concludes the matter before the Court.

Electronically signed on April 21, 2016 at 11:48 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

5